Jacksonville and Savanna Railroad Co. *v.* Kidder.

---

THE JACKSONVILLE AND SAVANNA RAILROAD COMPANY, Appellant, *v.* ALVIN KIDDER, Appellee.

#### APPEAL FROM McDONOUGH.

Where a jury are to assess the damages sustained by persons from the construction of a railroad over their land, the plans and estimates of the company, for that portion of the road, should be admitted in evidence.

The railroad company would be bound to construct the road substantially according to the plans and estimates thus offered in evidence. If it should deviate from these so as to occasion additional damage to proprietors of the land, such damages could be recovered in an action on the case, or a court of equity would restrain the company from building the road, until the additional damages had been assessed and paid.

The railroad company would not be bound by the verbal representations and promises of the engineers and others, but such officers might be examined for the purpose of explaining the plans and estimates.

THE Jacksonville and Savanna Railroad Company was incorporated by a special charter, by an act approved February 14, 1855, and authorized to construct a railroad from Jacksonville, by the way of Liverpool and Canton, to Savanna, and by an amendment, to Galena. The company was authorized by the charter, to condemn the lands required for the construction of the road, either according to the provisions of the law concerning right of way, approved March 3, 1845, or the amendment thereto, approved June 22, 1852.

This proceeding was commenced by the company, under the law of 1845, to condemn a part of a tract of land owned by Alvin Kidder, the defendant, before a justice of the peace, in Fulton county.

A petition setting forth a description of the land, and specifying the part required for the construction of the road, alleging that the company and defendant could not agree on the amount of damages, and that defendant objected to the construction of the road over his land, and praying the justice to cause three householders to be summoned, according to the provisions of chapter ninety-two, Revised Statutes of 1845, to assess the damages, was presented to Henry Walker, J. P., on 29th September, 1857.

On the same day he summoned Ira Johnson, James C. Wilson and Harrison P. Fellows, who were sworn, and afterwards assessed and reported the damages at $100.

From this decision the defendant appealed to the Fulton Circuit Court, and at the November term, 1857, the venue was changed, upon the defendant's motion, to McDonough county.

At the April term, 1858, of the McDonough Circuit Court, the appeal was tried before WALKER, Justice, and the damages assessed by a jury, at $750.

On the trial of the case, the company produced *H. J. Vaughn,* as a witness, who testified that he was the chief engineer of the company, and had been since work was first commenced, to locate the road; that he made the preliminary survey, and had run and permanently located the line of the road as far as it had been, and the work upon the road had all been done under his superintendence. He further testified that the defendant,

Alvin Kidder, owned a farm adjoining, and within the corporate limits of the town of Farmington, Fulton county, consisting of sixty-nine acres, all enclosed, part timber, and the balance cultivated land ; the farm was used mostly to winter stock ; Kidder having a large farm one or two miles off, where he kept the stock most of the time ; that there was a house and barn, both of some value, on the land. He further testified that the road of the plaintiff had been located across this tract of land, and the grading had been done ; that the road ran across the land, of the width described in the notice, and occupying $4\frac{84}{100}$ acres, and the line of the road across the land was $89\frac{2}{10}$ rods in distance. There is a spring of water from which the defendant obtains his stock water, in the wood-land, on the west side of the road. The wood-land was now fenced from the meadow and cultivated land ; a lane ran from the barn to the wood-land which was entered by a gate just on the line of the road. The road-bed, at the place where this gate stood, was on a level with the natural surface, without excavation or embankment. This was near the centre of the line of the road, as it ran across the land. The road, near the north line of the land, crossed a ravine, where a good passway for cattle, horses and wagons could be made under the road.

The witness further testified that the construction of the road across the land would be an advantage to it ; that making a fair estimate for the value without the construction of the road, and the value of the land remaining after the deduction made for the use of the road, it would benefit the owner of the land about $2,400.

The plaintiff then offered to prove by the witness, that in the plan and survey made by the company they were to make a passway underneath the railway on the defendant's land, at the ravine near the north end, which would be safe for the passage of cattle, horses, wagons and teams, for the exclusive benefit of the owner of the land, and that if such passway was made, the inconvenience and disadvantage to the owner of the land by the construction of the road, would be much less than without it ; to which the defendant objected, and the court sustained the objection and refused to admit the proof, to which decision of the court the plaintiff excepted.

The plaintiff then proposed to prove by the witness, that in the plan and survey of the company, which had been adopted by them, and which had been pursued so far as the work had progressed, the company was to make a crossing over the road, with a cattle-guard on each side of the crossing, and two gates, one on each side of the road, through which to pass over the road, at the end of the lane running from the barn to the wood-

land, and the same place 'where the plaintiff now entered the wood-land through one gate, and that with such provisions for crossing, the disadvantage to the owner of the land would be much less than without it; to which the defendant objected, and the court sustained the objection, and refused to admit such evidence, to which decision of the court the plaintiff excepted.

The plaintiff then proposed to prove, by the witness, that if a passage-way was made underneath the railway, at the ravine, and a proper crossing over the railway, at the end of the lane, running from the lane, the inconvenience and disadvantage from the construction across the land, would be much less to the owner of the land than it would be without them; to which the defendant objected, and the court sustained the objection, and refused to admit such evidence, to which the plaintiff excepted.

The plaintiff then called *Imri Dunn*, *Jonas Marchant*, and *Joshua R. Breed*, as witnesses, severally sworn, and each of them testified that the construction of the road across this tract of land would be a benefit to the owner, and enhance the price, and that after deducting all disadvantages arising, the owner would derive a benefit of from $1,500 to $2,700.

The defendant then called *Jacob D. Hand*, *E. Robinson*, *I. B. Dixon*, *Hiram Sperey*, *Jacob Hamlin*, and *M. Blackburn*, who were severally sworn, and testified that they were acquainted with the land, and the construction of the railroad across the land, after deducting all benefits, would be a damage to the owner of the land, and such witnesses placed the damage at various sums, from $600 to $2,000.

The jury found the damages at $750.00. A motion for a new trial was overruled, and the plaintiff prayed an appeal to this court.

GOUDY & JUDD, for Appellant.

C. L. HIGBEE, for Appellee.

CATON, C. J. The jury in this case were called upon to "assess the damages which they should believe such owner or owners would sustain, over and above the additional value such land would derive from the construction of the road." And the question is, whether the plans and estimates adopted by the company for that portion of the road which passed over the land in question, should have been permitted to go to the jury. If admitted, they would have shown a road-way under the railroad, at a ravine near the north line of the land, and also a road-way over the railroad, with cattle-guards and gates, at the

place where the lane now is, which is used by the owner for the passage of his cattle from one part of the farm to another.

We are satisfied that these plans and estimates should have been admitted. So long as it was practicable to so construct the road as to make it of greater or less damage or benefit to the land over which it passed, it was impossible for the jury to come to any correct conclusion, as to the extent of the damage or the amount of the benefit, without knowing how the road was to be built. A deep cut or a high embankment, in all probability, would occasion greater damage than would accrue if the road was constructed without either, and yet it was, no doubt, possible to make it in either mode. Indeed, it seems to us that the plan upon which the road was to be built, and the mode of construction, were of the utmost importance to enable the jury to come to a correct conclusion, and that it was not only the right but it was the duty of the railroad company to furnish full plans, profiles and estimates of that part of the road, and if they failed or neglected to do so, then the jury were authorized to presume that the road would be constructed in the mode the most injurious, within the bounds of reasonable probability. The objection, and the only objection which has been urged to the admission of the plans, etc. in evidence, is, that those plans may be changed, and the road constructed in a different and more injurious mode than there represented, and for such additional or increased damages the party can have no redress. It has been so held, perhaps, in one or two cases, but we cannot acquiesce in the reasoning by which those decisions are supported, and are by no means disposed to adopt them. Such a rule does not tend to completely protect the rights of either party. We do not hesitate to say that the company would be bound to construct the road substantially according to the plans thus put in evidence, and if its own or the public interest required a deviation from such plan to the injury of the owner of the land, he could recover those damages in an action on the case, or on the implied undertaking that the road should be constructed conformably to such plan. We would not be understood as saying that the verbal representations and promises of the engineers, or others, should be binding upon the company, or that they should be permitted to go to the jury to influence their finding one way or the other, unless they were sworn to, and in proper explanation of the plans, that they might be the more readily understood by the jury. In this way alone can complete justice be done to both parties. Thus alone can the jury be properly enlightened as to the real amount of the damage which will be sustained, and in no other legitimate mode can the owner of the land be properly protected against in-

creased injury, occasioned by a change of the plan, or the construction of the road in a manner not anticipated at the time of the assessment of damages. In this way the company may be protected from paying any more damage than it shall actually occasion, as well as compelled to pay all the real damage which result from the construction of the road. It was further said that the wagon-way under the railroad was not a part of that road, but foreign to it, and so of the cattle-guards and gateways, and particularly the last. All these are properly appurtenant to the railroad, and may be shown upon the plans and estimates of the road, and so also of fences, which, in that way, the company may oblige itself to build, although otherwise it might not be compelled to build them. Take this very case of the proposed road-way under the railroad, which is at a place where the railroad passes over a ravine, that might be passed by a fill, or a bridge sufficiently high for a convenient road-way. If such road-way would be at a convenient place to accommodate the owner of the land, it might very materially lessen the damages which he would sustain without it. Or it might be so inconveniently located as to lessen the damages in no appreciable degree. Of this the jury would be the judges. But assume the case where the damages would be actually diminished by one thousand dollars, and the road-way might be constructed by but an increased expense of one hundred dollars, if done when the work is progressing, while if the ravine were filled instead of arched or bridged, in order to save that small outlay, it would be afterwards impracticable for the owner of the land ever to make a road-way there, the making of the road-way when the work is in progress would be actually a saving of nine hundred dollars. It is for the general interest of society that this amount should be saved, and but simple justice to the company that it should be thus permitted to lessen the damages which it would otherwise be bound to pay. Should the company change the plan thus offered in evidence and preserved in the records of the court, and undertake to construct the road on a plan more injurious to the land, a court of equity would restrain them till the additional damages were assessed and paid.

We think the evidence was improperly excluded, and for that reason the judgment of the Circuit Court must be reversed, and the cause remanded.

*Judgment reversed.*

WALKER, J., having tried this cause in the court below, took no part in this decision.