(No. 21008.—

THE EAST PEORIA SANITARY DISTRICT, Appellee, *vs.* THE TOLEDO, PEORIA AND WESTERN RAILROAD *et al.* Appellants.

*Opinion filed October 21, 1933.*

MILLER, ELLIOTT & WESTERVELT, and LARKIN, RATH-
BONE & PERRY, (J. M. ELLIOTT, of counsel,) for appellants.

BEN L. SMITH, and POTTS & ALLISON, (WILLIAM A.
POTTS, of counsel,) for appellee.

Per CURIAM: This was a proceeding under the Emi-
nent Domain act instituted in the county court of Tazewell
county by the East Peoria Sanitary District to condemn a
parcel of land for the use of the district. The Toledo,
Peoria and Western Railroad, a corporation, the owner
of the land sought, the Central Union Trust Company of
New York, (the trustee in the trust deed executed by the
railroad company to secure an issue of bonds,) and the un-
known owners of the bonds secured by the trust deed, were
made defendants. The cause was tried and judgment was
rendered upon the verdict of the jury fixing the compensa-
tion to be made for the land taken at $2070.06 and allow-
ing nothing for the land not taken. The defendants have
appealed.

The petition, after alleging the organization of the peti-
tioner under the Sanitary District act approved June 22,
1917, (Laws of 1917, p. 396; Cahill's Stat. 1931, chap. 42,
par. 316, p. 1192; Smith's Stat. 1931, chap. 42, par. 299,
p. 1207;) represents that within the boundaries of the dis-
trict, and forming a part of it, is section 31, town 26 north,
range 4 west of the third principal meridian, the northeast
quarter of which has been subdivided into lots, two of which
are designated as lots 39 and 40; that the plans adopted

by the petitioner contemplate the maintenance of a common outlet for the drainage of the surface waters of the district and the construction of a 54-inch tile drain leading from a ditch located near the northwest corner of lot 39, known as Dolan's ditch, for a distance of approximately 455 feet, to an open ditch 15 feet in width at the bottom, to be excavated along the south side of State Route No. 8 on the north line of lot 39 to a point near the northeast corner of that lot, thence south on the east side of the lot to the roadway of the New York, Chicago and St. Louis Railroad Company, and thence connecting with three 60-inch tile drains through the roadway and by open drain south, on the east side of lot 40, to and connecting with three 60-inch tile drains through the right of way of the Toledo, Peoria and Western Railroad, near the southeast corner of lot 40; that petitioner has acquired the right of way for its tile drain and open ditch along State Route No. 8 and to a point near the northeast corner of lot 40, but has not been able to acquire the right of way along the east line of the lot from the south right of way line of the New York, Chicago and St. Louis Railroad Company to and through the open tile drains in place through the right of way of the defendant railroad; that the petitioner proposes to construct a ditch on the east line of lot 40 leading from the end of the tile drains at the right of way of the New York, Chicago and St. Louis Railroad Company to the north end of the tile drains on the right of way of the defendant railroad, of the depth of approximately five feet, the width of 15 feet on the bottom and 25 feet at the top, the dirt excavated to be thrown on the west side of the ditch, leaving a berm of the width of 10 feet, such excavation to form a continuous levee from the right of way of the New York, Chicago and St. Louis Railroad Company to the right of way of the defendant railroad, and for the purpose of such improvement the petitioner requires a strip of ground 75 feet in width and approximately 739

feet in length off of the east side of lot 40 from the south right of way line of the New York, Chicago and St. Louis Railroad Company to the north end of the tile drains running through the roadway of the defendant railroad, and the defendant railroad is the owner of such strip of ground.

The respondents severally filed cross-petitions showing that the railroad owned all of lot 40 and lands lying west of lot 40 between its right of way and that of the New York, Chicago and St. Louis Railroad Company, and its right of way 100 feet wide adjacent to lot 40 on the south and extending both east and west is its main right of way for the operation of its trains in commerce, both interstate and intrastate; that upon lot 40 and its other property west of it are extensive yards, shops, round-houses and other railroad facilities maintained and used by the railroad company in the conduct of its railroad business, which will be greatly damaged by the proposed taking and use by the petitioner of the strip of land in question; that the railroad company is also the owner of four acres immediately east of lot 40, and this tract is connected with lot 40 by a railroad track, and is so located that it can, and will, be used by the railroad company for the purpose of extending its switch yards and tracks to connect with its main line tracks east of the east line of lot 40, and the proposed taking and use of the strip off the east end of lot 40 will necessitate the construction and maintenance by the railroad company of bridges for the purpose of maintaining and operating its railroad tracks over the ditch to be constructed by the petitioner, to the great damage of the railroad company; that the railroad company has constructed three drainage pipes or culverts through its right of way near the southeast corner of lot 40, extending to Farm creek, for the purpose of the drainage of surface waters from the land north of the right of way, and the proposed connection of an open ditch with these three culverts will greatly damage and in-

jure them and will result in great expense for the construction and maintenance of additional culverts.

The following plat will help to an understanding of the case:

The tract A B C D, known as lot 40, belongs to the railroad and is used for its shops, round-house and terminal yard. It also owns another tract, containing four acres, adjoining lot 40 on the east, which the appellants' witnesses testify is suitable for the extension of the railroad's yards. The railroad has a stub-track, represented by the lines S T, which extends from lot 40 on the tract east of it. The land sought to be condemned is the east 75 feet of lot 40 between the line C D and the dotted line. Lot 40 and the four-acre lot east of it are bounded on the north by the right of way of the New York, Chicago and St. Louis Railroad Company, which is commonly known as the Nickle

Plate. The slope of the ground between the two railroads is to the southwest. The land north of the Nickle Plate is hilly and rises abruptly. The tracks of the railroads were higher than the natural surface of lot 40, and when the Toledo, Peoria and Western erected its shops, round-house and other buildings it filled in the surface of the lot to the level of the tracks. It also built a dike on the east end of lot 40, extending from the one railroad to the other and to the same elevation as the railroads. The petition seeks to condemn the ground occupied by this dike in the execution of a plan to divert the water which is now carried off to the west by certain ditches on the north side of the Nickle Plate railroad to a new channel, which would take it under the Nickle Plate and by an open ditch on the property sought to be condemned cause it to be discharged into Farm creek, on the south side of the Toledo, Peoria and Western, after passing under the right of way of the latter railroad through three Armco pipes which extend through the embankment.

At the beginning of the trial of the case the appellee introduced evidence of its engineer, who described the location of the property proposed to be taken and the location of the proposed improvement by the re-location and construction of the ditches involved and the relation of such re-location and construction to the land of the appellant railroad. The plans were introduced in evidence and a detailed account of the work proposed to be done was given. The petitioner then offered in evidence a certified copy of a resolution adopted by the board of trustees of the petitioner, authorizing its attorneys to file a stipulation in the cause at the beginning of the hearing, providing that the petitioner agrees that it may be incorporated in any judgment to be entered in the cause, in the event the lands in question were taken, that the petitioner and its successors would provide and maintain the open ditch across the east end of lot 40 and construct the same under plans

and specifications as shown by the drawing on the plat attached to the stipulation; that the petitioner would further construct and maintain a wooden pile-trestle bridge under the railroad now extending across and over the levee on this strip of land, (that is, the stub-track shown on the plat,) and that the bridge would be constructed in accordance with the plans and specifications shown by the drawing on the blue-print attached to the resolution; that the petitioner would construct and maintain a re-inforced concrete head-wall across the ends of the three open pipes on the north side of the appellant's railroad tracks, constructed according to the plans and specifications shown by the drawing on the blue-print attached; and the petitioner offered to show to the court that the plan and method of construction of the pile bridge and concrete head-wall were good and sufficient for the purposes for which they would be used. The defendants objected to the introduction of this resolution on the ground that it was not competent or proper for any purpose. The objection was overruled, and the defendants, out of the presence of the jury, further objected that the defendants were entitled, under the law, to be paid in cash the full amount which may be necessary or required for building and maintaining perpetually such form of bridge or trestle or other means of crossing the proposed ditch with its railroad track as in the judgment of the railroad company might be necessary or required in order to keep its railroad in that state of repair, suitable for operation, to comply with its statutory duties to maintain and operate safely its railroad; and the same objection was made to that part of the stipulation relating to the construction and maintenance of the bulkhead at the north end of the drain pipes. Objection was also made that the court was without jurisdiction to hear, consider or determine the question of fact with reference to the character or sufficiency of the proposed bridge and bulkhead. The court overruled the objection and heard a

number of witnesses testify as to the sufficiency of the proposed bridge and bulkhead, and at the close of the testimony on this subject the appellants moved to strike it all out, on the ground that the court, in hearing it, was usurping the power and authority of the jury. This motion was denied.

The appellants in introducing their evidence offered testimony in regard to a plan of extending to the north the three Armco pipes and of installing additional similar pipes to permit the stub-track and additional contemplated tracks to cross the strip proposed to be condemned otherwise than on the wooden trestle. This was objected to by the appellee and the objection was sustained.

The resolutions were competent evidence, and the court did not err in overruling the objection to them.

Long ago it was held that in a proceeding to condemn land for the construction of a railroad and assess the damage sustained by the owners, the plans and estimates adopted by the railroad company for that portion of the road which passed over the land in question should be permitted to go to the jury, so long as it was practicable to construct the road so as to make it of greater or less damage or benefit to the land over which it passed. It was said to be impossible for the jury to come to any correct conclusion as to the extent of the damage or the amount of the benefit without knowing how the road was to be built. (*Jacksonville and Savanna Railroad Co.* v. *Kidder,* 21 Ill. 131.) In *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 Ill. 388, it was said: "Since the decision in the case of *Jacksonville and Savanna Railroad Co.* v. *Kidder,* 21 Ill. 131, the practice has always been, in condemnation cases, to admit in evidence the plans of the work proposed to be done or (on) the land taken, otherwise it could not be so well known how the projected improvement would affect the residue of the property." In *Elgin, Joliet and Eastern Railroad Co.* v. *Fletcher,* 128 Ill. 619, where the railroad company undertook to erect and

maintain fences and construct farm crossings for the use of the property owner on whose land a right of way was being condemned, it was held competent for the party seeking condemnation to bind itself, by an offer in open court, to the performance of duties like those there offered to be performed, and to thereby, and to the extent that such performance would prevent damages that would otherwise occur, abridge the claim by the land owner for damages.

The appellants rely upon *Chicago and Alton Railroad Co. v. Springfield and Northwestern Railroad Co.* 67 Ill. 142, and *St. Louis, Jacksonville and Chicago Railroad Co. v. Springfield and Northwestern Railroad Co.* 96 id. 274. In those cases one railroad company desiring to carry its tracks beneath those of another, proposed to cut through the high embankment which supported the tracks of the other road. The court said that the defendant was entitled to such a sum for damages "in money" as would enable it to construct and keep in repair all such works as might be necessary to keep its tracks in safe condition. But in those cases there was no stipulation of the party seeking to condemn to do anything calculated to relieve the defendant of the burden of keeping its tracks in safe condition. The general rule has been announced in many cases that the filing in court of a stipulation by the petitioner in a condemnation proceeding, agreeing to do certain things which would reduce the injury to property not taken, subjects the estate acquired by the condemnation judgment to a condition of a perpetual and binding character, which cannot be evaded or denied. *Lieberman* v. *Chicago and South Side Rapid Transit Co.* 141 Ill. 140; *Lyon* v. *Hammond and Blue Island Railroad Co.* 167 id. 527; *Prather* v. *Chicago Southern Railway Co.* 221 id. 190; *Smith* v. *Claussen Park Drainage District,* 229 id. 155; *East Side Levee District* v. *Jerome,* 306 id. 577.

The position of the appellants throughout the trial was that they were not in any way bound by the filing of the

proposed stipulation, and they maintain the same position in this court. It was impossible to try the case fairly without the introduction of the stipulation or resolutions. It was not necessary to state in the petition the particular manner in which the land was to be used, as that may be shown by the plans and specifications of the petitioner. (*Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Sanitary District of Chicago,* 218 Ill. 286.) These are binding on it and the petitioner may give them in evidence, as was held in the cases already cited, or the defendant may have them produced on motion. (*Suver* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 293.) Without them it was impossible to tell the character of the work to be done or the extent of the damage it would do. When the right to take private property for public use without the owner's consent has been conferred upon any corporate or municipal authority, the necessity or propriety of the taking is ordinarily not a judicial question into which the courts may inquire. (*Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Sanitary District of Chicago, supra.*) The necessity of the improvement for whose construction the condemnation of property is sought, and the manner of its construction, are for the consideration of the condemnor, and will not be reviewed by the courts, unless, perhaps, for a gross abuse of discretion. The question for the jury is, besides the ascertaining of compensation for the land taken, What damages, if any, will the defendant sustain by reason of the construction of the proposed improvement in accordance with the plans of the petitioner? To answer this question requires a knowledge of those plans.

The testimony heard by the court in regard to the resolutions and plans was not material. They were admissible in evidence and proper for the consideration of the jury without any preliminary evidence other than their adoption by the trustees of the petitioner. The court made no finding and none was required. They were admissible because

they were the plans showing the contemplated improvement for which the damages, if any, were to be allowed.

The appellants contend that one of the resolutions was inadmissible because it referred to property owned by the "Toledo, Peoria and Western Railway" and the "T., P. & W. Ry.," and cannot be held to refer to the Toledo, Peoria and Western Railroad. The resolution contains a legal description of the land involved and indicates in detail the obligations undertaken with respect to the land. It stipulates that such obligations should be covenants running perpetually with the land. The other resolution names the Toledo, Peoria and Western Railroad, refers to the first resolution and sets forth an additional obligation undertaken in connection with the plan described in the first one. There can be no doubt that the appellant the Toledo, Peoria and Western Railroad could enforce the obligations undertaken, and the contention cannot be sustained.

The appellants contend that the court erred in admitting the testimony of several witnesses. Some of them testified before the court, in the absence of the jury, as to the adequacy of the undertakings set forth in the appellee's resolutions, and what has been said indicates that no harmful error was committed. The other witnesses mentioned testified as to the value of the land sought to be taken. It appears that all of them were land owners of the vicinity who were personally acquainted with the property and testified to an acquaintance with land values in that neighborhood. The abstract does not indicate that any objection was made to their qualifications or to the testimony which they gave, and appellants are not, therefore, in a position to raise the question. *Tebow* v. *Wiggins Ferry Co.* 241 Ill. 582.

The appellants offered no evidence before either the court or the jury to show that the trestle proposed to be maintained was not sufficient. They objected to the court hearing evidence apart from the jury upon the ground

that the matter was for the jury. Before the jury they merely offered to show the cost of something else—another plan or scheme—without questioning the sufficiency of the bridge or the other things mentioned in the stipulation or resolutions. The appellants argued that they were deprived of their constitutional right to a jury trial because the resolution relative to the trestle bridge, levee and head-wall were improperly heard by the court, which had no right to hear evidence as to the adequacy of the resolutions, and because the jury should have been allowed to consider the evidence as to the cost of the scheme proposed by appellants. The resolutions were properly admitted, and in ascertaining damages it was the duty of the jury to take them into consideration. No evidence was offered challenging the adequacy of the proposed bridge, levee and head-wall. The evidence offered by the appellants ignored the stipulation and resolutions and required an allowance of damages without regard to them. The record does not show that the court refused to submit to the jury any question which the appellants could rightfully demand that the jury hear. The hearing of evidence by the court was not injurious to the appellants, and the evidence which the appellants actually offered to submit to the jury was not competent to be received.

The petitioner's first instruction advised the jury that the highest and best use which the land owner was entitled to have considered in fixing the compensation for land taken or damages to land not taken must be such use or prospective use as affected the market value of the land on June 21, 1929, and that any imaginary use of the property or possible future uses dependent upon vague and uncertain contingencies or conditions are not elements to be taken into consideration in determining the compensation to be awarded. It appears from the evidence that the use of the four-acre tract for the extension of yard facilities is practicable and will provide an economical method of

extending and enlarging the tracks and yards, and that an assistant superintendent of the railroad has recommended to the management such extension of the yards and facilities. It is argued that the instruction had a tendency to mislead the jury. The owner of property sought to be taken or damaged for public use by the power of eminent domain is entitled to its value for the most profitable use for which it is available. This does not refer to a future possibility but to a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value. Remote or speculative damages cannot be considered. *City of Chicago* v. *Lord,* 276 Ill. 571; *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 286 id. 213; *Crystal Lake Park District* v. *Consumers Co.* 313 id. 395.

Six instructions were given at the request of the petitioner cautioning the jury that nothing should be taken into consideration as an element of damage which was remote, imaginary, uncertain or speculative, and it is argued that they were misleading and prejudicial to the appellants, and that their frequent repetition tended to create in the minds of the jury a feeling that in the opinion of the court the appellants were seeking to recover remote, imaginary, uncertain and speculative damages. Even assuming that these instructions stated the law correctly, the court should not have given so many repeating the same rule, for their tendency, when multiplied, was to impress the jury that there was danger of allowing the prohibited elements as items of damage and that repeated caution in that respect was necessary.

Instruction No. 14 is objected to because, it is argued, it tells the jury, in effect, that the railroad will not be compelled to raise its tracks or construct levees by reason of the construction of the proposed ditch. The instruction does not contain this absolute statement but does make it hypothetically, based upon the hypothesis, "unless you be-

lieve from the greater weight of the evidence in this case that the construction of the proposed improvement by the petitioner will directly and proximately result in the overflow of the lands and property of the defendant not taken by said improvement."

The nineteenth instruction given at the request of the appellee read as follows:

"You are further instructed that if you believe, from the entire testimony, and from your inspection of the premises, that any witness has magnified or exaggerated the value of the land taken or the damages to the land not taken, on account of his interest in the suit, or his prejudice, or want of knowledge or experience or truthfulness, then you have the right, and it is your duty, to disregard the testimony of such witness in so far as you believe the same is unjustly magnified or unjustly increased, either as to the value of the land taken or the damages to the property of the defendant not taken."

The court erred in giving this instruction for two reasons: First, because it authorized the jury to disregard the testimony of witnesses; and second, because it applied only to witnesses who testified in behalf of the appellants. *Herrin and Southern Railroad Co.* v. *Nolte,* 243 Ill. 594; *Chicago, Ottawa and Peoria Railway Co.* v. *Rausch,* 245 id. 477; *Super-Power Co.* v. *Sommers,* 352 id. 610; *Super-Power Co.* v. *Naffziger, (post,* p. 441.)

The appellants tendered to the court three instructions which the court refused, and the appellants insist that the refusal was erroneous. The first would have directed the jury, under a certain condition of the record, to award as damages such sum as would permit the railroad to construct and maintain a bridge of the kind and character it required across the ditch and such further sum as would be necessary for policing the bridge and protecting it from fire and water. The second instruction would have instructed the jury, under a certain condition of the record,

if it found from the evidence that the four-acre tract was suitable for use by the railroad to extend its switch yards and other facilities to the east and was bought for that purpose, and that in order to make use of it for that purpose it would be necessary for the railroad to construct bridges over the proposed ditch, then the jury should allow as damages to the railroad such amount as would be reasonably necessary for the construction of bridges for such number of tracks as the railroad might be reasonably expected to construct or maintain. The third instruction authorized the jury to allow as damages to the railroad the cost of the construction of a bridge for its track over the ditch to the four-acre tract. All of these instructions were properly refused because they ignored the resolutions and stipulation of the petitioner which were introduced in evidence.

The appellee asks the right to connect the proposed ditch with the three drains or culverts running through the appellant railroad company's embankment. These drains the appellee will use to convey to Farm creek the water which accumulates in the new ditch. The railroad company constructed these drains at a cost of $3194.84, yet the jury made no allowance for their use. Moreover, the uncontradicted evidence shows that the business of the railroad company requires the extension of its yards and facilities and that the use of the four-acre tract owned by the railroad company and adjoining lot 40 on the east is the most economical, and from an operating point of view the best, method of extending its yards and tracks. The damage consequent upon the separation of the four-acre tract from lot 40 by the construction of the proposed ditch, it is apparent, was not considered by the jury.

The judgment of the county court is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*