**STATE OF ILLINOIS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 397–87C.

United States Claims Court.

Dec. 21, 1989.

---

Jeffrey W. Finke, Chicago, Ill., with whom was Atty. Gen. of Illinois Neil F. Hartigan, for plaintiff.

Terence S. Hartman, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This matter is before the court on plaintiff's motion for summary judgment. Plaintiff asserted entitlement to $10,706,-268.72 as compensation for taking of plaintiff's property by defendant between 1945 to 1970. The taking was affirmed by the United States District Court for the Northern District of Illinois, as well as this court, according to plaintiff. Defendant argued, *inter alia*, that the district court had not previously determined that a taking had occurred and further, that plaintiff should have raised its present claim in the prior litigation. After a review of the parties' motions, relevant case law and the applicable regulations, the court denies in part and grants in part plaintiff's motion.

## FACTS

A. Historical Background

A discussion of the facts is set forth in its entirety in *Commissioners of Highways v. United States*, 466 F.Supp. 745 (N.D.Ill. 1979), *aff'd in relevant part*, 653 F.2d 292 (7th Cir.1981). However, this court finds it necessary to provide a brief summary of the historical background prompting the present cause of action.

Upon authorization from Congress in 1888, the Secretary of War announced the construction of a canal to link the Illinois and Mississippi Rivers. Two years thereafter, Congress approved funding for the project and, as is usually the case, directed the Secretary of War to acquire title to the desired land either by agreement, purchase, gift by the owners, or in the alternative, by condemnation proceedings litigated in federal court and controlled by Illinois state law. River and Harbor Act of 1890,

ch. 907, 26 Stat. 426, 449, *as amended,* River and Harbor Act of 1892, ch. 158, 27 Stat. 88, 106. Part of the consideration for the condemnation was to be the construction and maintenance by the United States of public roadway bridges across the canal. 27 Stat. at 106. Shortly thereafter the United States, where necessary, began condemnation proceedings in the United States District Court for the Northern District of Illinois. The Commissioners of Highways of various Illinois towns and counties along the canal route were to receive consideration of $1.00 per parcel plus a commitment by the United States, as owners, to construct and forever maintain the public roadway bridges.

The canal and bridges were completed and the canal was opened for navigation by 1907. However, despite the previous demand for the canal, by 1938 the United States found that the canal was no longer essential and a burden to preserve. Accordingly, the United States sought to divest itself of the canal and bridges. Serious negotiations to transfer ownership of the canal and bridges to Illinois from the United States began after World War II. In 1955, Illinois enacted legislation, which provided that upon acceptance of the canal and bridges, Illinois would create a state park on the acquired lands and responsibility for bridge maintenance would be placed on the municipal governments in which the bridges were located. Illinois and Mississippi Canal—State Park, Ill.Rev.Stat. ch. 105, ¶ 482d (1955).[1] Three years later, in 1958, Congress empowered the Army Corps of Engineers to 1) use its funds to repair and modify the canal in order to make it suitable for recreational purposes and 2) enter into an agreement with the State of Illinois for transfer of title to the canal including the bridges. Congress expressly excluded repair of "bridges and roads, which the United States has maintained or has been obligated to maintain." River and Harbor Act of 1958, Pub.L. No. 85–500, § 110(b), 72 Stat. 297, 302.

In 1960 the Corps and the State of Illinois executed a quit claim deed that transferred all of the federal government's right, title and interest in the canal and bridges. It also addressed the modification of the canal to a recreational area. Although the agreement stipulated that the United States would have no further obligations with respect to the Canal, there remained the question of whether the state or the federal government bore responsibility for maintenance of the bridges.

In 1962, Congress amended the River and Harbor Act to provide for supplemental funding "for the repair and modification of any canal properties and appurtenances, notwithstanding the provisions of section 110(b).... " River and Harbor Act of 1962, Pub.L. No. 87–874 § 106, 76 Stat. 1173, 1179. This amendment eliminated the condition in section 110(b) of the 1958 Act against canal bridge renovations. Soon thereafter, the 1960 quit claim deed was revised to incorporate the 1962 River and Harbor Act amendments. This incorporation permitted any and all congressionally authorized additional work. At this time, as well as in 1964 and 1971, the work schedules affixed to the agreement were modified. Notably, however, none of the work schedules provided for bridge repairs and the phrase in the original agreement, "[u]pon conveyance the United States shall have no further obligation with respect to the Canal," was specifically stricken from that quit claim deed. *Id.* Although a new work schedule was drafted in 1973 that entailed replacement and rehabilitation of the bridges, the parties never explicitly assimilated the draft into the quit claim deed.[2] The United States had, however, performed minimal but acceptable maintenance on the bridges. Finally, in 1970, Illinois accepted the amended quit claim deed to the canal. Later that year, Congress enacted the River and Harbor Act of 1970 further amending the 1958 Act to appropriate "upon completion of transfer

---

**1.** These governmental units were represented by the Commissioners of Highways in previous related litigation.

**2.** The United States suspended all further negotiations with the State of Illinois when the *Commissioners* lawsuit was filed in 1974.

to the State of Illinois of all right, title, and interest of the United States in and to the canal, an additional sum of $6,528,000 to be expended for the repair, modification, and maintenance of bridges...." River and Harbor and Flood Control Acts, 1970, Pub.L. No. 91–611 § 109(f), 84 Stat. 1818, 1821.

In 1974, the Commissioners of Highways of several townships and counties along the course of the canal, brought action in the United States District Court for the Northern District of Illinois against the United States to enforce the 1896 condemnation decrees. *Commissioners of Highways v. United States*, 466 F.Supp. 745 (N.D.Ill. 1979), *aff'd in relevant part*, 653 F.2d 292 (7th Cir.1981). The Commissioners sought to enjoin the United States to maintain the canal bridges forever. Illinois became a third-party defendant upon a charge by the United States that bridge maintenance obligations had been conveyed to the State by federal and state legislation, and title transfer. On April 29, 1980, the district court held that Illinois was responsible for all bridge maintenance from the 1970 transfer of title to the canal. The court further held that transfer of title did not relieve the United States of its outstanding obligation of bridge maintenance from 1945.[3] *Id.* at 766–67.

By 1975, it was known to all that the bridges were in considerable disrepair and constituted a clear and present danger to public safety. *Commissioners*, 466 F.Supp. at 753–54. After realizing this danger to the citizens of Illinois, the State entered into an ancillary agreement with the United States whereby Illinois would expend its own funds on emergency bridge restorations without waiving or prejudicing Illinois' rights in any impending litigation. *Commissioners v. United States*, (N.D.Ill.) (Findings of Fact and Conclusions of Law). In accordance with this stipulation, Illinois replaced thirty-nine bridges with culverts and roadways, built two new bridges, and rehabilitated eleven others for a total cost of $4,750,000.

In entering final judgment, the district court recognized that there were still outstanding deficiencies in bridge repair work beyond the thirty-nine "emergency" cases repaired by Illinois. In a subsequent memorandum, the court ordered defendant to pay $2,812,658 plus interest to the commissioners in order to return the remaining bridges to the condition in which they should have been when the canal was transferred. *Id.* at 12 (Findings of Fact and Conclusions of Law). This $2,812,658 plus interest was considered by the court to be "a reasonable cost of repairing all existing deficiencies to the culverts, replacement of eight original structures with culverts and constructing a new bridge." *Id.* at 7. The district court also expressly stated that its decision was in no way intended to compromise the state's right to look to the United States for reimbursement of sums already spent on the emergency repairs of the thirty-nine bridges. *Id.* at 12–13. In fact, the court explicitly directed the State to postpone prosecution of this remittance claim until after the *Commissioners* litigation. *State of Illinois v. U.S.*, 15 Cl.Ct. 399, 411 (1988). The United States deposited $3,722,572 with the Clerk of the Court of the United States District Court for the Northern District of Illinois on November 4, 1981 in full satisfaction of the district court's judgment.

On July 6, 1987, the State of Illinois, filed a lawsuit against the United States in this court for damages for failing to maintain the thirty-nine already repaired canal bridges, contrary to terms of the condemnation decrees. The United States moved to dismiss the claims for lack of jurisdiction and for failure to state a claim upon which relief could be granted. For its first claim, Illinois argued that failure to reimburse it for emergency repair work deprived plaintiff of property without due process of law, deprived plaintiff of just compensation for taken property, and violated the district court's order. *Id.* at 404. Illinois' second claim alleged that by wrongfully expending

---

3. By August, 1976, only $3,664,000 of the total $8,528,000 appropriated by Congress since 1958 for canal rehabilitation work had been expended; yet none of it had been expended for bridge maintenance work, despite the fact that $3,807,000 had been set aside for that purpose.

canal repair funds that the United States had contracted to the State of Illinois the United States had breached its 1960 contract with Illinois, deprived Illinois of just compensation for taken property, and disregarded the holding of the district court. *Id.*

This court dismissed Illinois' due process claim for want of jurisdiction, *Id.* at 412, held that Illinois' breach of contract claim was barred under issue preclusion and found that Illinois was not justified in arguing that the district court mandated reimbursement of bridge repair expenditure. *Id.* at 411. In essence, the district court had preserved to the State a "right to seek" reimbursement. *Id.* Illinois' reimbursement claim was never even presented in the district court proceedings. As it was unclear whether Illinois intended to allege the taking of the money reserved for the recreational modification of the canal, or instead the taking of its rights under the 1960 transfer agreement, this court found it could not find a claim upon which relief could be granted at that time. *Id.* The United States' motion for dismissal was denied only in part, however, since it was determined that the United States' failure to maintain the thirty-nine bridges repaired by the State was sufficient to state a Fifth Amendment "taking" claim. *Id.* It is precisely that issue that is before the court.

B. The Present Litigation

Plaintiff, the State of Illinois, filed a motion for summary judgment on December 15, 1988. Plaintiff contended that it was entitled to recover from defendant $4,750,000 spent on emergency bridge repair due to defendant's failure to fulfill its obligation to maintain the bridges from 1945–1970. Plaintiff alleged its entitlement was derived from a district court holding that the United States had "taken" Illinois property when it failed to pay past due maintenance for the canal bridges and that such a "taking" demanded just compensation.

Plaintiff further asserted that it was entitled to compound interest under the 1975 amended agreement whereby the State made repairs to the thirty-nine bridges. The total sum sought by plaintiff amounted to $10,706,268.72, as of June 30, 1989, with compound interest accruing thereafter at a rate of $2,676.57 per day, until such rate would change on January 1, 1991.[4]

Defendant argued that the district court had not determined that lack of canal bridge maintenance constituted a taking compensable under the Fifth Amendment. Further, defendant contended that had this been declared a Fifth Amendment taking case, plaintiff was bound to that claim in the earlier action. Defendant argued that where a party can satisfy the principal elements necessary to invoke issue preclusion, the party should not be permitted to use offensive collateral estoppel. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Defendant also claimed that no mutuality of parties existed between *Commissioners* and the current action and that issue preclusion can only be applied offensively against the United States when such mutuality is present. As for the compound interest claim pursued by plaintiff, defendant retorted that compound interest is not presumed to run against the government nor is it looked upon favorably.

DISCUSSION

A case is ripe for summary judgment when there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). A genuine issue of material fact[5] is present if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reaching its conclusion, the court must resolve all significant doubt over factual is-

---

4. In taking cases, this court has looked to the interest provisions of the Contract Disputes Act of 1978 for guidance in setting interest rates.

5. A fact is material if it could affect the outcome of the suit. Its materiality is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

sues, if any, in favor of the nonmovant and draw all reasonable inferences against the moving party's motion. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir.1987). With this in mind, the court now turns to the issues of the present litigation to determine whether summary judgment is appropriate.

**A. The Doctrine of Collateral Estoppel and Whether a Taking Occurred**

■ The doctrine of collateral estoppel prohibits the re-litigation of issues essential to a judgment which have been actually, necessarily, and finally determined by a competent court when raised again in subsequent litigation involving parties to the prior action. *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984); *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090–91 (Fed.Cir.1984); *Mother's Restaurant Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). Parties to a prior suit are forever bound in any subsequent suit as to matters which were offered and received, *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979), or matters which should have been offered and received. *Reidt v. United States*, 13 Cl.Ct. 741, 744 (1987) (citations omitted); *Prizer v. United States*, 11 Cl.Ct. 184, 186–87 (1986) (citations omitted).

■ Plaintiff asserted that the issue as to whether or not a taking had indeed occurred had been previously determined by the district court in the affirmative in *Commissioners*. Therefore, plaintiff argued, defendant was barred by the doctrine of collateral estoppel from re-litigating that issue. Defendant contested plaintiff's interpretation and asserted that the district court's determination that the United States had not complied with its contractual promises to maintain the bridges did not necessarily indicate that the court had resolved whether a taking actually occurred. Furthermore, defendant argued that Illinois had been free to assert a taking complaint against the United States in the *Commissioners* litigation and that "where

a plaintiff could easily have joined in the earlier action or where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). This court, however, need not examine these assertions of collateral estoppel as the language of the April 24, 1980 memorandum issued by the district court in *Commissioners* specifically preserves the taking claim for later adjudication. It states:

Nothing this Court has said, however, either in its Findings of Fact and Conclusions of Law, its Judgment, or in this Memorandum, is to be taken as in any way compromising the right of the State of Illinois to look to the United States for the sums expended through its Capital Development Board that replaced 39 bridges over the Illinois and Mississippi Canal with culverts during the period between 1970 and 1975. This subject, as representatives of the United States have stated in the record of these proceed[ings], will be discussed by agencies of the State and of the United States after the termination of this litigation.

*Commissioners v. United States*, at 12–13 (N.D.Ill.1980) (Memorandum decision on damages). Therefore, both plaintiff's and defendant's assertions of collateral estoppel, which might otherwise succeed, fail. Accordingly, this court holds that: 1) the taking issue had not been previously decided; and 2) plaintiff is not barred from presently litigating this issue before this court.

In the present action, this court previously determined that defendant had been obligated to plaintiff, as part of the condemnation agreement, to build and maintain bridges and roads over the canal. *State of Illinois*, 15 Cl.Ct. at 405. Furthermore, this court found that "[t]he transfer of the canal relieved defendant of liability only with respect to future bridge maintenance work; it did not require plaintiff to indemnify defendant for maintenance required during 1945–1970." *State of Illinois*, 15 Cl.Ct. at 405; *see Commissioners of High-*

*ways v. United States,* 653 F.2d 292, 298 (7th Cir.1981). The question as to whether a withholding had occurred was, thus, previously decided. However, whether such a withholding constitutes a Fifth Amendment taking is the issue that is specifically before the court for the first time today.

■ Under Illinois law, the governing law in this matter, stipulations as to future property use, construction, performance of duties, etc., are binding upon the condemnor. *See, e.g., East Peoria Sanitary Dist. v. Toledo P. & W. R.R.,* 353 Ill. 296, 187 N.E. 512 (1933) (a stipulation by condemnor, agreeing to perform certain acts to reduce injury to lands not taken, subjects the condemned estate to a binding condition which cannot be evaded or denied). Therefore, "plaintiffs have a vested right to compensation in the form of maintenance which would have put the bridges in good repair as of the time the canal lands were quit-claimed to the State of Illinois." [6] *Commissioners,* 466 F.Supp. at 767 (citations omitted). The United States had promised to maintain the bridges as part of just compensation. Failure to respect that agreement resulted in a taking since the entity deprived of its land was no longer compensated for its relinquished property. *See Regional Rail Reorganization Act Cases,* 419 U.S. 102, 150–51, 95 S.Ct. 335, 362–63, 42 L.Ed.2d 320 (1974). This holding is in accord with the established principle that "consideration other than cash—for example, any special benefits to a property owner's remaining properties—may be counted in the determination of just compensation." *Id.* Therefore, based on the briefs of the parties and relevant case law, this court finds that the condemnation decrees which obligated the United States to perform bridge maintenance, constituted a portion of just compensation demanded by the Fifth Amendment. *Commissioners,* 466 F.Supp. at 761.

**B. Damages**

■ Because this court has concluded that defendant wrongfully withheld com-

pensation and that this withholding was equivalent to a Fifth Amendment taking, plaintiff is entitled to some amount of compensation. However, quantum in this action cannot be disposed of by means of this summary judgment motion due to an outstanding issue of material fact. Although this court has found that the money wrongfully denied plaintiff was the costs of placing the bridges in the condition they would have been upon the date of transfer had the United States properly maintained them in accordance with the condemnation decree, because the enumerated repair did not begin until 1975 and because responsibility for maintenance shifted to Illinois upon transfer of the bridges in 1970, plaintiff has not satisfactorily articulated the amount of money owed to it. In order to determine this amount, the parties must calculate what would have been the necessary amount spent in order to place the bridges and areas at issue in the satisfactory condition upon conveyance to plaintiff in 1970 (*i.e.,* including depreciation, if any, of the total amount spent by Illinois for emergency bridge repairs begun in 1975 by any further damage caused during the five year lapse, from 1970 to 1975, before any repairs were undertaken). Without this figure, the court is unable to dispose of plaintiff's claim in finality. In the absence of agreement by the parties the court must adjudicate this quantum at trial.

■ The determination of the just compensation, which includes the proper rate of interest, is basically a question of fact. *Miller v. United States,* 223 Ct.Cl. 352, 620 F.2d 812, 837 (1980). However, whether or not compound interest should or should not be awarded is a question of law to be determined at the discretion of the judge. *See, e.g., Brookfield Constr. Co. & Baylor Constr. Corp. v. United States,* 228 Ct.Cl. 551, 661 F.2d 159 (1981) (determining on a motion for summary judgment that simple interest and not compound interest will be awarded to plaintiff); *see generally, Dy-*

---

**6.** Although, some of the parties in *Commissioners* were different than those in the case at hand, both plaintiff and defendant were parties

and the facts underlying the issue of whether a taking had occurred were the same.

*namics Corp. v. United States,* 766 F.2d 518, 520 (Fed.Cir.1985) (The decision as to what rate should be awarded is a judicial role commanded by the Constitution). This determination can be finalized at this time despite the lack of concrete calculations on the base amount owing plaintiff. It has been consistently decided that just compensation in takings matters includes the interest which has collected from the taking date until relief. *Albrecht v. United States,* 329 U.S. 599, 602, 67 S.Ct. 606, 608, 91 L.Ed. 532 (1947); *Miller,* 620 F.2d at 837; *Yaist v. United States,* 17 Cl.Ct. 246, 261 (1989). In Fifth Amendment takings cases, "the right to interest or a fair equivalent, attaches itself automatically to the right to an award of damages." *Shoshone Tribe v. United States,* 299 U.S. 476, 497, 57 S.Ct. 244, 251, 81 L.Ed. 360 (1937) (citations omitted). "The determination of the proper rate of interest or delay compensation is one of fact ... and is exclusively a judicial function under the Constitution." *ITT Corp. v. United States,* 17 Cl.Ct. 199, 233 (1989) (citations omitted).

■ The Claims Court has invariably contended that a simple interest rate is the proper means of assessing the full value of just compensation. *Yaist,* 17 Cl.Ct. at 262. However, plaintiff challenged this calculation method, asserting that "[t]he economic reality is simply that ... the landowner would have been able to earn compound interest. Thus, prohibiting the landowner from recovering compound interest on the deficiency acts to retroactively reduce the value of just compensation at the time of the taking by undervaluing its present worth." *ITT Corp.,* 17 Cl.Ct. at 237. Notwithstanding the *ITT Corp.* decision to award compound interest to plaintiff, this court finds that such an award is not appropriate in the case at bar. *ITT Corp.* was a patent infringement suit and the award of compound interest was based on that fact. The *ITT Corp.* court itself distinguished eminent domain cases from patent cases as far as compound interest was concerned. That court stated:

The reasons to compound interest to achieve the measure of delay compensa-

tion in this case are not unique to plaintiff, but are to patent suits against the Government. Eminent domain cases involving takings of land may or may not evolve from takings of land applied in commerce. A patent holder, in contrast, has been given limited license to monopolize his invention, and the Government's unauthorized use of a patented item frustrates the economic expectations generated by the patent. The taking in an infringement action always impacts on a[n] established or potential commercial exploitation of a patent if the patent holder either has commercialized the patent or is in the business of commercializing a similar product or process as that called for by the patent. This may not be true in takings of land.

*ITT Corp.,* 17 Cl.Ct. at 240. As proposed in *ITT Corp.,* this court concludes that the motivation behind an award of compound interest to a patent holder is not present nor applicable to a distinct eminent domain case such as this one. *See Yaist,* 17 Cl.Ct. at 262 n. 21. Furthermore, even if it were applicable, Illinois has not satisfactorily established that simple interest would be inadequate. *Branning v. United States,* 784 F.2d 361, 364 (Fed.Cir.1986). As compound interest does not ordinarily run against the United States, *United States v. Isthmian S.S. Co.,* 359 U.S. 314, 325, 79 S.Ct. 857, 863, 3 L.Ed.2d 845 (1959), and as Illinois has not presented sufficient reason or a unique circumstance to justify an award of compound interest, defendant will be liable only for simple interest.

CONCLUSION

This court concludes that a taking had occurred for bridge repair and maintenance costs to which plaintiff is entitled compensation. Pursuant to a memorandum issued by the district court prior to the preceding litigation, plaintiff had not relinquished its taking claim due to its participation in the previous litigation as a third-party defendant. However, at this time, the court finds it cannot dispose of the entire matter due to a material question of fact of the quantum of damages attributable to the emergency repairs began by plaintiff in

1975 that defendant should have performed during 1945 to 1970. Once that figure has been determined, whether through agreement of the parties or further litigation, simple interest and not compound interest will attach to the computation. Plaintiff's motion for summary judgment is therefore granted in part and denied in part.

IT IS SO ORDERED.