Scofield, J.
delivered the opinion of the court:
Charles W. C. Dunnington, the ancestor of the claimants, was, on June 29, 1863, and for many years before, the owner, in fee-simple, of lot No. 3 of square 688 in Washington, D. C.
May 12,1863, proceedings in rein under the Confiscation Act ■of July 17, 1862, and joint resolution of the same date (12 Stat., 589 and 627) were begun by the defendants in the Supreme Court of the District of Columbia to confiscate said lot as the property of Dunnington, who was in rebellion against the United States. Under these proceedings the lot was duly condemned as enemy property and exposed to public sale, at which A. E. Shepherd became the purchaser and entered into possession.
Under the Act of May 8, 1872 (17 Stat., 83), enacted for,the purpose of enlarging the Capitol Grounds, this lot was condemned, at the instance of the defendants, by proceedings in said court, and taken for public use. By the further proceed- . ings in court the lot was appraised at $9,858, which turn was paid into court by the defendants, as provided in the act. Thereupon the defendants took possession of the lot, and it is now embraced in the ornamental grounds about the Capitol.
April 3, 1873, by order of the court, the purchase money so deposited was paid to the heirs of Martin King, deceased, who, by several intermediate conveyances, had succeeded to the title of Shepherd.
August 14,1887, the ancestor, Dunnington, died, leaving as heirs the present claimants.
‘It is conceded by counsel for the defendants that, under the construction put upon the Confiscation Acts by the Supreme Court, the estate acquired by Shepherd terminated at the death of Dunnington, and that the fee then devolved upon the claimants, or at least would have so devolved if the land.had not already been taken by the defendants through the proceedings in court and appropriated to public use. It is also conceded *412 that the claimants have not, in fact, received any compensation therefor.
This suit is brought to recover the “just compensation” which the Constitution requires should be made to the owners of private property when t alien for public use.
It will scarcely be denied that justice requires that the land should be surrendered or its appraised value paid, to the claimants. In this suit they seek only “just compensation,” the recovery and payment of which, as the court understands it, confirms in the defendants the possession and title now claimed by them. Two objections are interposed to such recovery:
First. It is said the defendants have already discharged their constitutional obligation by depositing the compensation claimed with the court of the District, and that the order of the court directing the same to be paid to parties other than the claimants is an adjudication of ownership conclusive upon all parties claiming title.
The place and manner of deposit were designated in a special law, made by the defendants for their own convenience. The Constitution required the defendants to make “just compensation” to owners. It makes no difference to such owners through what channels or by what agency the compensation may be sent, provided it finally reaches the right party. Placing the compensation where the rightful owners may never be able to claim it, and where, as in this case, they could by no possibility hear of it until it had passed beyond their reach, is not a fulfillment of the constitutional obligation.
So far as the order of court is concerned it ought to be a satisfactory answer to say that the claimants were not parties to" it. If Dnnnington had died prior to these proceedings they might have been parties, to, and concluded by, them. As it was, they were neither summoned nor heard, and it was impossible that they should be, because at that time they had no legal existence. The court, even, was not advised, so far as the record shows, that any such claim existed or might ever arise. But, in legal contemplation, the defendants knew of it, for they were the originators of and parties to the confiscation proceedings, whereby the title of Dunuington was divested and hung up somewhere, possibly in the defendants as trustees, until by bis death it should devolve upon whoever should then be *413 found to be bis heirs. (Wallach v. Van Riswick, 92 U. S. R., 202; Shields v. Schiff,, 124 U. S. R., 351.)
We are unable to see how, under such circumstances, the claimants’ right to compen'sation could be defeated, either by the deposit in the court or by any disposition of it which the court may have made. When they came into their title they had a right, by affirming so much of the condemnation proceedings as vests title in the defendants, to claim the appraised value.
The second objection is to the jurisdiction of the court. ■ That jurisdiction, by section 1069 of the Revised Statutes, extends to “ all claims founded upon any law of Congress or upon any regulation of an Executive Department, or upon any contract, express or implied. In the facts of this case all these elements of j urisdiction are to some extent combined. The defendants took private property for public use, and the Constitution enjoins them to make “just compensation.” The very taking imposes upon the defendants a duty from which alone a promise to do the only thing thatjustifi.es the taking may be implied. But there was also a law of Congress which undertook to discharge that duty. It directed that compensation should be made and prescribed a mode of ascertaining the. amount of it. It went further, and made an appropriation to meet it, and directed the Secretary of the Interior to pay it over. The amount was ascertained, the money drawn from the Treasury, and only failed of finally reaching the claimants by a misdirection in the transmission of it. For this misdirection the claimants were not, but the defendants were, responsible. These facts combined not only constitute an implied promise, but may be regarded as a continuing offer of settlement which the claimants accepted at the first possible opportunity. They attest at once both the liability of the defendants and the jurisdiction of the court.
This conclusion is sustained by more than one decision of the Supreme Court. The opinion of that court in the case of The United States v. The Great Falls Manufacturing Company (112 U. S. R., 645), appears to be fairly stated in the head-notes, which we quote as follows :
“ Where property to which the United States asserts no title is taken by their officers or agents, pursuant to an act of Congress, as private property for the public use, the Govern *414 ment is under an implied obligation to make just compensation to the owner.
11 Such an implication being consistent with the constitutional duty of the Government, as well as with common justice,, the owner’s claim for compensation is one arising out of implied contract, within the meaning of the statute defining the jurisdiction of the Court of Claims, although there may have been no formal proceedings for the condemnation of the property to public use.
“ The owner may waive any objection he might be entitled to make based upon the want of such formal proceedings, and, electing to regard the action of the Government as a taking under its sovereign right of eminent domain, may demand just, compensation for the property.”
This case is cited with approval in Hollister v. Benedict Manufacturing Company (113 U. S. R., 67.)
In the Great Falls Manufacturing Company v. The Attorney-General (124 U. S. R., 581) the question is again discussed and the same principles enunciated. '
Judgment will be entered for the claimants in the sum of $9,858.